United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TECHNOLOGY LICENSING COMPANY, INC,

    Plaintiff,

    v.

NOAH COMPANY LLC,

    Defendant.

_____/

No. C-11-3498 EMC

**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

**(Docket No. 17)**

    Plaintiff Technology Licensing Company, Inc. ("TLC") has filed suit against Defendant Noah Company LLC ("Noah") for patent infringement. After Noah failed to respond to the complaint, the Clerk of the Court entered its default. TLC then filed the currently pending motion for default judgment. Noah did not file a written opposition to the motion, nor did it make an appearance at the hearing on the motion, despite having been given notice of such. Having considered TLC's brief and accompanying submissions, as well as the argument of counsel and all other evidence of record, the Court hereby **GRANTS** the motion for default judgment.

## I.   FACTUAL & PROCEDURAL BACKGROUND

    In its complaint, TLC alleges the following facts. TLC is the owner of United States Patent No. 5,734,862. *See* Compl. ¶ 5. The patent covers, *inter alia*, a system and method for making and/or viewing DVDs. *See id*. TLC has licensed the patent to more than 35 manufacturers and/or sellers of DVD players. *See id*. According to TLC, Noah is infringing the patent at issue by "manufacturing and/or selling and/or offering for sale and/or importing and/or using embodiments of the invention of the [p]atent." *Id.* ¶ 8.

United States District Court
For the Northern District of California

Because it was not entirely clear from the complaint what TLC's theory of infringement was, the Court asked TLC to provide supplemental briefing on the issue.[1] *See* Docket No. 21 (Order at 1-2). In those papers, TLC explains that any product that complies with the DVD specifications of the Format/Logo Licensing Corporation ("FLLC") -- in particular, the "seamless branching" feature -- infringes the patent at issue and Noah's DVD product displays the FLLC's "DVD Logo," which indicates that its product does fully comply with the FLLC's specifications. *See* Supp. Remer Decl. ¶¶ 13-14.

After TLC filed and served its complaint, Noah failed to make any response. Accordingly, TLC moved for entry of default, and the Clerk of Court entered Noah's default on November 14, 2011. *See* Docket No. 12 (notice). TLC subsequently filed its motion for default judgment. A hearing was held on TLC's motion on July 31, 2012. *See* Docket No. 28 (civil minutes). At the hearing, the Court indicated that it would grant TLC's motion but that it had concerns about the damages requested by TLC. The Court left the record open for TLC to submit additional evidence in support of its request for damages. TLC did not do so.

## II. DISCUSSION

A. Service of Process

In deciding whether to grant or deny a default judgment, a court must first "assess the adequacy of the service of process on the party against whom default is requested." *Board of Trustees of the N. Cal. Sheet Metal Workers v. Peters*, No. C-00-0395 VRW, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D. Cal. Jan. 2, 2001). As Noah appears to be a corporation, Federal Rule of Civil Procedure 4(h) governs. Under Rule 4(h), a corporation may be served pursuant to the law of the state where the district court is located or where service is made. *See* Fed. R. Civ. P. 4(h)(1)(A) (referring to service under Rule 4(e)(1), which provides for service pursuant to state law). In this case, the state where this Court is located and where service was made is the same -- *i.e.*, California.

Under California law, a corporation may be served in several different ways. For example, California Code of Civil Procedure § 416.10 provides that a corporation may be served by

---

[1] The Court also asked TLC to provide additional evidence to support its claim for damages.

2

personally delivering a copy of the summons and complaint to, *e.g.*, "the president, chief executive officer, or other head of the corporation . . . or a person authorized by the corporation to receive service of process." Cal. Civ. Proc. Code § 416.10. Under California Code of Civil Procedure § 415.20, substitute service on a corporation is also permissible. *See id.* § 415.20(a).

The Court finds that TLC has established a prima facie case of proper service pursuant to § 416.10. TLC has provided evidence that Andy Chang is both the CEO and agent for service of process for Noah. *See* Carpenter Decl., Exs. B, D (website of California Secretary of State and website of Noah). TLC has also provided a declaration from the process server, which reflects that service was made at Mr. Chang's residence which he also uses as a business office for Noah. The declaration further indicates that the person served at the residence was likely Mr. Chang himself. While the individual served claimed he was not Mr. Chang, he would not give the process server his name, nor would he provide the process server with any identification to establish that he was not Mr. Chang. *See* Docket No. *id.*, Ex. A1 (proof of service). Thus, it is a fair inference that the individual was in fact Mr. Chang; at least, there is a prima facie case of such and, in the absence of any evidence to the contrary, the Court concludes that service was adequately effected pursuant to § 416.10.

Even if the individual was not in fact Mr. Chang, the Court concludes that TLC has made out a prima facie case of proper service under § 415.20(a). Section 415.20(a) provides:

> In lieu of personal delivery of a copy of the summons and complaint to the person to be served as specified in Section 416.10 . . . , a summons may be served by leaving a copy of the summons and complaint during usual office hours in his or her office or, if no physical address is known, at his or her usual mailing address, other than a United States Postal Service post office box, with the person who is apparently in charge thereof, and by thereafter mailing a copy of the summons and complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left."

Cal. Code Civ. P. § 415.20(a). TLC implemented substitute service because (1) the process server left a copy of the summons and complaint for Mr. Chang at his residential address, which he also uses as a business office, with a person apparently in charge thereof and (2) a copy of the summons and complaint was thereafter mailed to Mr. Chang. Similar to above, it is a fair inference that the individual who received personal delivery was a person apparently in charge, at least in the absence

3

1 of any evidence to the contrary.[2] *Cf. Bein v. Brechtel-Jochim Group, Inc.*, 6 Cal. App. 4th 1387,
2 1393 (1992) (noting that "[t]he evident purpose of the Code of Civil Procedure section 415.20 is to
3 permit service to be completed upon a good faith attempt at physical service on a *responsible*
4 *person*"; ultimately holding that a guard of a gated residential community in which the defendant
5 company's president resided was a "personal apparently in charge of a corporate office" for
6 purposes of substitute service where the "relationship with the person to be served makes it more
7 likely than not that they will deliver process to the named party") (emphasis in original); *see also*
8 Rutter Group, Cal. Prac. Guide: Civ. Proc. Before Trial § 4:128 (noting that "substitute service on
9 entity defendants may be effected by leaving summons with secretaries, receptionists, doorkeepers,
10 or other persons 'apparently in charge' of the premises") (emphasis omitted).

B. *Eitel* Factors and Default Judgment

Having concluded that service of process was properly effected, the Court now turns to the merits of TLC's motion. Federal Rule of Civil Procedure 55(b)(2) authorizes a court to enter judgment against a defendant against whom a default has been entered. The determination to grant or deny a motion for default judgment is within the trial court's discretion. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Factors to guide a court's discretion include:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Generally, upon entry of default, the factual allegations of the plaintiff's complaint will be taken as true, except for those relating to the amount of damages. *See TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987).

The Court shall consider first the second and third *Eitel* factors. These factors basically "'require that a plaintiff state a claim on which the [plaintiff] may recover.'" *Philip Morris U.S.A.*

---

[2] The Court notes that, in addition to formal service of process, TLC provided informal notice of the suit to Noah on several occasions, both through mail and email. *See* Carpenter Decl. ¶¶ 5-14.

4

1  *Inc. v. Castworld Prods.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003). To state a claim of patent
2  infringement, a plaintiff must allege at the very least ownership of the allegedly infringed patent and
3  infringement of the patent by the defendant, *e.g.*, by selling the allegedly infringing product. *See,*
4  *e.g.*, *Kilopass Technology Inc. v. Sidense Corp.*, No. C 10-02066 SI, 2010 WL 5141843, at *3 (N.D.
5  Cal. Dec. 13, 2010) (noting that, to state a claim for direct infringement, a plaintiff must allege "(1)
6  ownership of the allegedly infringed patent, (2) the infringer's name, (3) a citation to the patent, (4)
7  the infringing activity, and (5) citations to applicable federal patent law") (citing *Phonometrics, Inc.*
8  *v. Hospitality Franchise Sys., Inc.*, 203 F.3d 790, 794 (Fed. Cir. 2000)). TLC has made such
9  allegations in its complaint. Moreover, TLC has now provided evidence to the Court as to what its
10 theory of infringement is. In addition, TLC has submitted evidence that it purchased one of Noah's
11 DVD products and confirmed through a test that the product performed the "seamless branching"
12 function. *See* Supp. Remer Decl. ¶¶ 12-16. Under these circumstances, the Court concludes that the
13 second and third *Eitel* factors weigh in favor of a default judgment.
14      The majority of the remaining *Eitel* factors also weigh in favor of default judgment. For
15 example, if the motion for default judgment were to be denied, then TLC would likely be left
16 without a remedy. *See Walters v. Shaw/Guehnemann Corp.*, No. C 03-04058 WHA, 2004 U.S. Dist.
17 LEXIS 11992, at *7 (N.D. Cal. Apr. 15, 2004) ("To deny plaintiffs' motion [for default judgment]
18 would leave them without a remedy. Prejudice is also likely in light of the merits of their claim.");
19 *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion
20 for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery.").
21 Also, the sum of money at stake in the action is not completely disproportionate or inappropriate
22 given that TLC is only seeking damages equal to the amount of an average license agreement for use
23 of the patent which Noah is using in the manner consistent with "average or typical licensee."
24 Remer Decl. ¶ 6-7; *see also Pepsico*, 238 F. Supp. 2d at 1176 (stating that "the court must consider
25 the amount of money at stake in relation to the seriousness of Defendant's conduct"). Finally,
26 because Noah has not filed an answer to TLC's complaint, there is little to suggest that there is a
27 possibility of a dispute concerning material facts, and it is unlikely that Noah's default was due to
28

5

1 excusable neglect, especially when TLC served its motion for default judgment on Noah but still
2 received no response. *See* Docket No. 17 (proof of service).

3     Accordingly, the Court concludes that a default judgment against Noah is appropriate.

4 C.     <u>Damages</u>

5     Having determined that a default judgment is appropriate, the Court now turns to the
6 question of damages. The Court reiterates that, even though, as a general matter, the factual
7 allegations of the plaintiff's complaint will be taken as true upon entry of default, this rule does not
8 apply to allegations relating to the amount of damages. *See TeleVideo*, 826 F.2d at 917. The
9 plaintiff has the burden of proving up damages. *See Board of Trustees of Pipe Trades Dist. Council*
10 *No. 36 v. Drexal Power, Inc.*, No. C 04-0630 BZ, 2004 U.S. Dist. LEXIS 15657, at *5-6 (N.D. Cal.
11 July 26, 2004).

12     In its papers, TLC asserts that it has licensed the use of its patent to 41 different companies;
13 that the average license fee is $59,416, *see* Remer Decl. ¶ 6; and that, because Noah is an "'average
14 or typical licensee,'" Remer Decl. ¶ 7, TLC should be awarded $59,416 in damages, representing a
15 reasonable royalty that Noah would have had to pay to legally use the patent at issue.

16     TLC correctly points out that a reasonable royalty may be awarded where there is patent
17 infringement. The Patent Act provides that "[u]pon finding for the claimant the court shall award
18 the claimant damages adequate to compensate for the infringement, but in no event less than a
19 reasonable royalty for the use made of the invention by the infringer." 28 U.S.C. § 284; *see also*
20 *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009) (noting that "[t]wo
21 alternative categories of infringement compensation are the patentee's lost profits and the reasonable
22 royalty he would have received through arms-length bargaining"). "A reasonable royalty can be
23 calculated from an established royalty, the infringer's profit projections for infringing sales, or a
24 hypothetical negotiation between the patentee and infringer based on the factors in *Georgia-Pacific*
25 *Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970)."[3] *Wordtech Sys. v.*

---

[3] The *Georgia-Pacific* factors include the following inquiries:

6

*Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1319 (Fed. Cir. 2010). While the hypothetical

    1. The royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty.

    2. The rates paid by the licensee for the use of other patents comparable to the patent in suit.

    3. The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

    4. The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

    5. The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promotor.

    6. The effect of selling the patented specialty in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales.

    7. The duration of the patent and the term of the license.

    8. The established profitability of the product made under the patent; its commercial success; and its current popularity.

    9. The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results.

    10. The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.

    11. The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use.

    12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

    13. The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

    14. The opinion testimony of qualified experts.

    15. The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee -- who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention -- would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

1 negotiation approach "necessarily involves some approximation of the market as it would have
2 hypothetically developed absent infringement," it still "requires sound economic and factual
3 predicates." *Riles v. Shell Exploration & Prod. Co.*, 298 F.3d 1302, 1311 (Fed. Cir. 2002). In the
4 instant case, TLC advocates for use of the hypothetical negotiation approach.

5 The Court begins by noting that TLC has provided some factual predicate for its request for
6 damages. As noted above, TLC has licensed the patent to 41 different companies, and the average
7 license fee (a lump-sum royalty payment) is $59,416. However, TLC has not provided any concrete
8 evidence as to why Noah is an average or typical licensee. Nor has TLC provided information about
9 what Noah's anticipated sales would have been at the time of the hypothetical negotiation or what
10 Noah's expected or estimated use of the patent would have been, each of which likely would have
11 been factors in determining what a reasonable royalty would be. *See, e.g.*, *Lucent Technologies, Inc.
12 v. Gateway, Inc.*, 580 F.3d 1301, 1327 (Fed. Cir. 2009) (noting that "the more frequently most
13 inventions are used, the more valuable they generally are and therefore the larger the lump-sum
14 payment," while "[c]onversely, a minimally used feature, with all else being equal, will usually
15 command a lower lump-sum payment").

16 In light of these circumstances, the Court asked TLC at the hearing on the motion whether it
17 could offer additional evidence to support its claim for damages or whether it would stand on the
18 papers already submitted, in which case the Court would be inclined to award the lowest licensing
19 fee, *i.e.*, $10,000. *See Boston Scientific Corp. v. Johnson & Johnson*, 550 F. Supp. 2d 1102, 1120
20 (N.D. Cal. 2008) (stating that, "[w]here little or no satisfactory evidence of a reasonable royalty is
21 presented, the court should 'award such reasonable royalties as the record evidence will support'")
22 (quoting *Dow Chemical Co. v. Mee Industries, Inc.*, 341 F.3d 1370, 1382 (Fed. Cir. 2003)). TLC
23 indicated that it would look into whether additional evidence could be supplied. Ultimately, TLC
24 did not provide any additional evidence. Accordingly, the Court concludes that an appropriate
25 damages award is $10,000.
26 ///
27 ///
28 ///

### III. CONCLUSION

For the foregoing reasons, the Court grants TLC's motion for default judgment and awards damages in the amount of $10,000. The Clerk of the Court shall enter judgment in accordance with this opinion and close the file in the case.

This order disposes of Docket No. 17.

IT IS SO ORDERED.

Dated: September 5, 2012

_____
EDWARD M. CHEN
United States District Judge